Jacobson & Company, Inc. *v.* International Environment Corporation, Appellant.

440

Argued December 6, 1966.   Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas Raeburn White, Jr.,* with him *John Francis Gough, Richard W. Hopkins,* and *White & Williams,* for appellants.

*Allen J. Levin,* with him *Theodore R. Mann,* and *Goodis, Greenfield, Narin & Mann,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 14, 1967:

This appeal follows the entry of a final decree in equity against the defendants, Kiley and International Environment Corporation (IEC), his present employer. The decree enforces a restrictive covenant not to compete, and requires an accounting from Kiley of his salary, and from IEC for profits garnered as a result of its participation in the breach.

Plaintiff-appellee, Jacobson & Company, Inc. (Jacobson), is a New York corporation engaged in the selling and installing of building materials in the states of Connecticut, New York, New Jersey, Pennsylvania, and Delaware. Approximately 20% of appellee's business is the sale and installation of radiant acoustical

ceilings, which are competitive with conventional heating and cooling systems.

Appellant, Kiley, was initially employed by Jacobson in 1957 as a salesman, working out of appellee's Philadelphia office, under an oral contract, containing no restrictive covenant, at a salary of $10,000. The Philadelphia office of appellee embraced a territory consisting of the eastern half of Pennsylvania, southern half of New Jersey, and New Castle County, Delaware. Prior to his employment with Jacobson, Kiley had had considerable experience in the field of temperature control, and had become acquainted with a number of architects and engineers.

On July 1, 1959, a new agreement, terminable by either party on thirty days' notice, was entered into between Kiley and Jacobson. This agreement provided for a reduction in salary to $9,000 and a profit-sharing arrangement. The chancellor found further that this agreement of July 1 contained a restrictive covenant: "Your employment shall be on a month to month basis and terminable by either you or by us, giving the other thirty (30) days' notice. If you should elect to terminate your employment as permitted in this paragraph, you shall not for a period of two years after such termination directly or indirectly within the states of New York, Conn., New Jersey, Pennsylvania and Delaware, represent or be employed by or otherwise become associated with any person, firm or corporation which shall engage in the radiant heating or acoustical or any other business engaged in by the company nor otherwise engage in any of such businesses."

Although the agreement was not signed until January 29, 1960, the chancellor found a written contract effective as of July 1.

Under the 1959 contract as a result of the profit-sharing arrangement, Kiley's compensation increased each year through 1963, in which year he received some

$24,000. In April, 1964, the terms of Kiley's employment were substantially changed by oral agreement, making Kiley district supervisor for the Philadelphia area in charge of a full range of environmental control products and increasing his salary to $10,000. However, he was removed to a large degree from sales, and thus his earnings were reduced from approximately $24,500 in 1963 to approximately $12,500 in 1964. Moreover, the changeover eliminated higher positions in the radiant ceiling line to which Kiley aspired.

In October of 1964, Richard D. Rothschild, a substantial stockholder and executive of plaintiff in the acoustical ceiling division resigned from plaintiff's employ. The chancellor further found that in the same month, Rothschild and Kiley met and began discussions which led to the formation of the defendant corporation on December 14, 1964. It was found that at the time of the formation of defendant corporation, Rothschild and defendant Kiley had an understanding that Kiley would become a shareholder of defendant corporation. This he became in early March, 1965, when he purchased 25% of the stock of defendant corporation for $5,000, became a member of its Board of Directors, and lent it an additional $10,000. Rothschild purchased the balance of the stock of defendant corporation. Kiley did not leave plaintiff's employ until May 7, 1965.

This suit was brought to enforce the restrictive covenant, to compel Kiley to repay his salary taken since the formation of defendant corporation, and to compel defendant corporation to account for profits garnered through Kiley's aid.

In his original adjudication, the chancellor found that Kiley had entered into a new contract with Jacobson in July, 1959, containing a valid restrictive covenant, i.e., one which was ancillary to the employment relationship, and supported by consideration, but con-

cluded that the covenant was not enforceable, since enforcement was not reasonably necessary to protection of Jacobson's legitimate business interests, would impose an unreasonable hardship on Kiley, and would otherwise offend public policy. The chancellor found that IEC's purpose in hiring Kiley was not primarily to damage Jacobson. This finding was, he said, a natural concomitant to his finding of no enforceable covenant. However, the chancellor found that Kiley made use of certain confidential information with regard to two jobs on which Jacobson had bid, and which IEC later bid in April and May, 1965. The chancellor thus found a violation of Kiley's duty of loyalty, and directed him to return his salary for March-May, 1965.

Exceptions were filed by both sides to the chancellor's findings of fact and conclusions of law and to the decree nisi. These exceptions were heard by the chancellor alone, sitting as the court en banc, who made no change in his findings of fact, but modified three of his conclusions of law. He reaffirmed his conclusion that Kiley's restrictive covenant was ancillary to his employment, supported by consideration, and therefore valid, but, feeling that he had applied an incorrect standard to determine whether the covenant was enforceable, reversed himself on that issue and concluded that enforcement of the restrictive covenant *was* reasonably necessary to the protection of plaintiff's legitimate business interests and would *not* impose undue hardship upon Kiley. He therefore felt that "a conclusion that IEC induced the breach of Kiley's contract was required".

Before reaching the merits of the case, we should like to consider one preliminary matter, the scope of review. It is quite clear that our duty compels us to give the findings the same careful scrutiny which we would give in any other case, and no more. In passing upon the questions raised on this appeal, we must

adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal. *Hayes v. Altman,* 424 Pa. 23, 26, 225 A. 2d 670 (1967); *Keyser v. Margolis,* 422 Pa. 553, 223 A. 2d 13 (1966), and cases cited therein. Appellant urges that we should give extraordinary scrutiny to the chancellor's findings where they are approved by a court en banc consisting of the chancellor alone. The instant procedure is expressly authorized by Philadelphia Local Rule C. P. *256(a) which provides that: "exceptions to adjudications in equity . . . shall be heard by the trial judge who shall designate the time and place of such hearing or argument." This local rule was adopted in 1963, pursuant to the general authority conferred on the several courts of common pleas by the Act of June 21, 1937, P. L. 1982, §2, as amended, 17 P.S. §62: "Each of the courts of common pleas . . . may adopt additional local rules for the conduct of its business, which shall not be inconsistent with . . . said general rules prescribed by the Supreme Court of Pennsylvania." Having acquiesced in the procedure below, the appellants cannot now be heard to challenge it on the basis of an alleged inconsistency between Philadelphia Rule *256 and the general Pennsylvania Rule of Civil Procedure 1519(b).

On the merits, appellants make a number of contentions. Several of their arguments cluster around the view that the restrictive covenant was not a part of Kiley's contract. Even if it were a part, they claim, the court should have refused enforcement of such covenant as inequitable and unreasonable and contrary to the public policy of the Commonwealth. Finally, the corporate defendant, IEC, contends that the chancellor's conclusion that IEC wrongfully induced the breach of Kiley's contract is wholly inconsistent with the findings and the record below.

It is appellants' belief that the restrictive covenant was not a part of Kiley's contract at the termination of his employment. They claim first that the restrictive covenant lacks consideration, basing their claim on their belief that not one, but two contracts were created in 1959-60. It is their view that an oral contract lacking a restrictive covenant was entered into in July, and a written contract containing a restrictive covenant entered into in January. Since Kiley gained no additional benefit in January, and Jacobson suffered no detriment, it is hornbook law, say appellants, that no consideration exists in this unilateral detriment (to Kiley) situation. The court below, however, concluded that there existed only one contract which was entered into in July, 1959. Appellants attack that conclusion on several grounds. They allege that the findings are both inconsistent and arbitrary. Appellants apparently feel that the finding that Kiley's new employment agreement was written cannot be reconciled with the conclusion of the court en banc that a single contract was entered into in July, 1959, and that the later signing of that contract had no legal significance. We cannot agree with appellants that the court is enforcing a contract that it has said to be without legal significance. It was merely the *later signing* which was without legal significance.

Appellants argue that the terms were not agreed to in July, but rather that the compensation terms were not agreed to until January, and that a finding to the contrary cannot be substantiated. This argument is not helpful to appellants. If, indeed, the compensation was not agreed upon until January, then there was additional benefit to Kiley and detriment to Jacobson, and thus the contract containing the restrictive covenant was supported by consideration. It is obvious that whatever the date of final agreement, the commission and the restrictive covenant were consideration

for each other. More to the point, there was some evidence by which the court en banc could find agreement as of July, and we are loathe to disturb the finding. *Hayes v. Altman,* supra; *Keyser v. Margolis,* supra.

Appellants also contend that there was no restrictive covenant in Kiley's contract by virtue of a certain "substantial" change in Kiley's position in 1964. Kiley was made Philadelphia district supervisor of a full range of environmental control products, and his salary was increased by $1,000 per year. Although an official bulletin announced the change, no new contract was ever signed. The law is clear that "he who asserts a novation must properly plead and prove it." *Yoder v. T. F. Scholes, Inc.,* 404 Pa. 242, 173 A. 2d 120 (1961); *Taylor v. Stanley Co. of America,* 305 Pa. 546, 158 A. 157 (1932). The court below found that Kiley was employed under the 1959-60 contract, and therefore its restrictive covenant, until his resignation, and thus rejected the assertion of a novation. It was scarcely likely that Jacobson would permit a novation in 1964; as Kiley became a more valued employee, the restrictive covenant increased rather than decreased in importance to Jacobson. It need hardly be pointed out that the mere fact that the court finds a new contract in 1959 does not necessitate its finding a new contract in 1964, as appellants seem to imply. The circumstances in one situation were far different from those in the other.

Appellants next contend that no valid restrictive covenant was entered into because the alleged covenant was not ancillary to the employment contract. The "ancillary" rule was repeated by this court in *Morgan's Home Equip. Corp. v. Martucci,* 390 Pa. 618, 629, 136 A. 2d 838 (1957): "It has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of

the valuableness of the consideration exchanged therein. United States v. Addyston Pipe & Steel Co., 85 Fed. 271, 281-82 (6th Cir. 1898), aff'd, 175 U.S. 211 (1899)." In *Addyston*, the leading American case on the subject, the Sixth Circuit through Judge TAFT (later Chief Justice of the United States) discussed the reasons for the "ancillary" rule: "[The] very statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant in restraint of trades is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. The main purpose of the contract suggests the measure of protection needed, and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined. . . . But where the sole object of both parties in making the contract as expressed therein is merely to restrain competition, and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly, and therefore would be void. . . . There is in such contracts no main lawful purpose, to subserve which partial restraint is permitted, and by which its reasonableness is measured, but the sole object is to restrain trade in order to avoid the competition which it has always been the policy of the common law to foster."

Appellants urge that the instant covenant is not ancillary, as we have defined it, for several reasons. They contend first that the covenant must be executed contemporaneously with the contract of employment. With this statement of the law we are in accord. *Addyston*, supra. However, appellants claim that this requirement is not met, by virtue of the fact that employment was taken by an oral contract in July while

the covenant was not inserted until the written contract in January. We have already rejected the duality of contracts argument when dealing with the question of consideration for the covenant. The fact that the contract was not reduced to writing until January is, we have seen, of no significance.

Appellants further contend that the restrictive covenant is not ancillary because it was not executed simultaneously with the *initial* taking of permanent employment with the company. Exhaustive research has disclosed no appellate case in any jurisdiction dealing with this issue. Neither *Barb-Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 225-226, 206 A. 2d 59 (1965), nor *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A. 2d 292 (1967), supports appellants' position. In *Barb-Lee,* we said: "Where the restrictive covenant is ancillary to a contract establishing an employment relationship where none existed previously thereto, the employment constitutes consideration supporting that covenant, as well as all other terms of the employment contract." We were there speaking of consideration, nowhere did we define "ancillary", as that case was not directed to the instant issue. In *Capital Bakers,* we held that a covenant in an employment contract executed some twelve years after the initial taking of permanent employment was not ancillary to the taking of employment. However, we emphasized that the new contract was "without any change in his employment status." Thus it did not qualify as "taking of employment". In the instant case, there was a clear change in Kiley's employment status when the covenant was agreed to. Although appellants' policy argument that the employee changes his position and the employer acquires leverage at the initial taking of permanent employment has some merit, we feel it is outweighed by the arguments on the other side. The opinion sur exceptions in the instant case aptly sets these forth: "The chancellor

is of the opinion that the covenant appearing in Kiley's contract of employment was supported by consideration and was ancillary to his taking of employment. . . . The chancellor is of the opinion that the Pennsylvania Supreme Court in Morgan's Home Equipment Co. v. Martucci, 390 Pa. 618 (1957) did not mean to imply that for a restrictive covenant to be valid in any employer-employee contract such a covenant would have to be part of the original contract of employment between the parties. This would be an unrealistic requirement, for in many instances, including the present case, the insertion of a restrictive covenant in the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant. This is an economic reality, and the law should be influenced by it." It is true that a restrictive covenant in the novice's contract might well be held to be unreasonable as applied to a novice who remained a novice. But an interpretation of *Morgan* as appellants urge would require a company to insert such a covenant in every contract. The uncertainty resulting and the litigation unleashed stagger the imagination. Far better to allow the parties themselves, when they feel the employee's degree of expertise warrants it, to decide when to insert a restrictive covenant.

Finally, on the ancillary issue, appellants focus upon the alleged inconsistency between the chancellor's conclusion that Kiley's restrictive covenant was ancillary to the employment relationship and his conclusion that the covenant of another employee, Kassner, was not ancillary. In the first place, the correctness of the chancellor's conclusion vis-a-vis Kassner is not

now before us. However, the findings were that Kassner was permanently hired in February, 1962, under an oral contract *without* a restrictive covenant, and in June required to execute a written employment contract identical to that under which he had been working, except that it contained a restrictive covenant. Clearly, here is a case of no consideration for the covenant. Perhaps the chancellor gilded the lily a bit in basing his conclusion on the "not ancillary" ground as well as the lack of consideration ground, but this is understandable as the issues are closely intertwined. In any case, the chancellor was correct in concluding that Kiley's covenant was ancillary.

Appellants further contend that even if we should find that the covenant is a part of Kiley's contract, and that it is ancillary to an employment contract, we should refuse enforcement as inequitable and unreasonable. In his adjudication and conclusions of law, the chancellor concluded that enforcement of the covenant was not reasonably necessary for the protection of plaintiffs' legitimate business interests and would impose an unreasonable hardship on Kiley. In the opinion sur exceptions, he reversed himself on both phases of this question, because he believed he had misinterpreted Pennsylvania's public policy as disapproving restrictive covenants in employment contracts, when instead they should be viewed as a necessary and proper phase of contract law, and because he had improperly placed the burden on plaintiff of proving the reasonableness of enforcement. Appellants here admit their error in placing the burden of proving reasonableness upon plaintiff; *Plunkett Chemical Co. v. Reeve,* 373 Pa. 513, 515, 95 A. 2d 925 (1953) ; *Harris Calorific Co. v. Marra,* 345 Pa. 464, 469, 29 A. 2d 64 (1942), but contend that they have met their burden.

Much time and energy has been expended by the parties in an attempt to shed light on Pennsylvania's

public policy vis-a-vis restrictive covenants in employment contracts. To say that the law favors upholding contracts, cf. *Pa. Funds Corp. v. Vogel,* 399 Pa. 1, 159 A. 2d 472 (1960), or that the law favors protecting an individual in his unrestricted pursuit of a livelihood, *Wexler v. Greenberg,* 399 Pa. 569, 579, 160 A. 2d 430 (1960), is hardly helpful to the practitioner. Both statements are broad generalities, while the practitioner of the law needs to apply these rules in specific instances. There can be no doubt at all that, as a broad general rule, restraints on competition are not viewed favorably. However, the generalization is so criss-crossed with exceptions that we must consider the particular area involved. The area here is restrictive covenants binding an employee. *Morgan,* supra, at 632, tells us that in this area "a more stringent test of reasonableness" is imposed than would be applied to such restrictive covenants ancillary to the sale of a business. Yet at the same time this court has time and again enforced a covenant in an employment agreement restricting an employee from engaging in competitive activities after the termination of his employment, e.g., *Beneficial Fin. Co. v. Becker,* 422 Pa. 531, 222 A. 2d 873 (1966); *Albee Homes, Inc. v. Caddie Homes, Inc.,* 417 Pa. 177, 207 A. 2d 768 (1965); *Barb-Lee Mobile Frame Co. v. Hoot,* supra. What it comes down to is that " 'employment contracts containing general covenants by an employee not to compete after the termination of his employment are prima facie enforceable if they are reasonably limited as to duration of time and geographical extent' ": *Barb-Lee,* supra, at 225. General covenants are reasonably limited if they are "within such territory and during such time as may be reasonably necessary for the protection of the employer . . . without imposing undue hardship on the employee. . . ." Restatement, Contracts, §516(f) (1932); *Morgan,* supra.

Under the above test, the covenant must stand. The evidence makes clear Jacobson's need for the protection. The radiant heating business is one in which the close personal contact of the sales representative with prospective buyers is crucial to success. As appellee points out in his brief, for a number of years, to the builders, engineers and architects in the area described by the limited covenant, Kiley *was* Jacobson & Co. Both the space and time limitations are proper for Jacobson's protection. As to time, cf. *Hayes v. Altman,* supra. With regard to area, Jacobson seeks enforcement only in the territory consisting of the eastern half of Pennsylvania, southern half of New Jersey and New Castle County, Delaware, rather than the broader area of the covenant. There can be no doubt that a court can properly reduce the geographical scope of a covenant; *Barb-Lee,* supra; *Smith's Appeal,* 113 Pa. 579, 6 A. 251 (1886). The reduced area is properly circumscribed. One salesman can thoroughly cover the area in this business.

Appellants point to two factors as indicative of Jacobson's lack of need for protection. First, they note that the covenant applies only in the case where Kiley quits, not where he is dismissed by Jacobson. Thus, say the appellants, the restriction must be merely a deterrent to resignation and invalid as a restriction on labor contrary to the public policy of the Commonwealth. Yet, we have seen the need for protection; if in the give and take of bargaining, Jacobson was unable to impose the covenant in every situation, surely it should not lose the benefit of that needed covenant where it was imposed. A second factor appellants point to is the chancellor's finding that Kiley received no special training or insight into the methods of doing business of Jacobson. Just this year, in *Hayes v. Altman,* supra, we dealt with this issue: "It is not necessary that an employee receive specialized training and

skills before we will enforce a restrictive covenant. In the *Morgan* case, supra, on page 631, we said an employee *may* receive specialized training and skills, not that an employee *must* receive specialized training and skills, before the restrictive covenant will be enforced. General covenants not to compete, therefore, are subject to the stringent test of reasonableness as to time and geographical area, and the receiving of special training and skills is just a fact that must be considered and alone is not necessarily controlling." (Emphasis in original)

Appellants argue that even if appellee does need the protection of the covenant, its need is outweighed by the harm resulting to Kiley from enforcement of the covenant. Perhaps Kiley will be precluded from exercising his greatest skills in an area where he has resided all his life. But we are not convinced that this is controlling. Requested enforcement is limited to the sale and installation of radiant ceilings. Kiley had previous experience in both plumbing and the entire range of temperature control and air conditioning. This case falls within the principles laid down in *Pa. Funds Corp. v. Vogel*, supra, where we rhetorically asked: "Is it to be feared, were the covenant specifically enforced against him, that Vogel [Kiley] would be 'prevented from practicing his trade or skill, or from utilizing his experience in the particular type of work with which he is familiar?' Is it reasonably to be expected that he 'may encounter difficulty in transferring his particular experience and training to another line of work' and that, as a result, 'his ability to earn a livelihood is seriously impaired?' We think not." Thus, we do not find enforcement of the instant covenant to be inequitable or unreasonable.

Nor will we overturn the chancellor's conclusion that IEC wrongfully induced the breach of Kiley's contract. There was certainly evidence to support such

a conclusion. We do not agree with IEC's contention that *Morgan* requires a purpose to cripple and destroy one's competitor before liability for inducing breach of contract can be found. On the contrary, we said there: "Defendant Morris Spiller admits that he offered employment and ultimately hired the other defendants with knowledge that they had signed restrictive agreements, and that they would be acting inconsistently with the covenants contained therein in the course of their employment. One who intentionally interferes with an existing contractual relation is subject to liability for the breach of the contract. See Caskie v. Philadelphia Rapid Transit Co., 321 Pa. 157, 184 Atl. 17 (1936); 2 Callmann, Unfair Competition & Trade Marks, §33.4(d) (2nd ed. 1950); Prosser, Torts, §106 (2nd ed. 1955)."

Clearly, Rothschild knew of the covenant with which he here interfered.

Decree affirmed, costs to be borne by appellants.

Mr. Justice COHEN took no part in the consideration or decision of this case.