## Paper Manufacturers Company v. Weiss

*C. David Krewson,* for plaintiff.

*Edward B. Bergman and Elias Magil,* for defendants.

MOUNTENAY, J., March 13, 1972.—This is an action in equity whereby plaintiff, Paper Manufacturers Company, seeks to enjoin the employment of its former employe, Weiss, by plaintiff's alleged

competitor, Penn Card and Paper Company, Inc. Plaintiff's complaint also asks that Weiss be enjoined from revealing plaintiff's trade secrets to Penn Card and finally that Penn Card be compelled to account to plaintiff for profits resulting from Weiss' employment by Penn Card and from the revelation by Weiss of plaintiff's trade secrets to Penn Card. Both defendants have filed preliminary objections in the nature of a motion for a more specific pleading, and defendant Penn Card has also demurred.

The complaint avers, in substance, that plaintiff is engaged in the manufacture and sale of paper products which it markets on a nationwide scale; that Weiss, over a period of many years, has become a top management employe of plaintiff and has learned many of plaintiff's "trade secrets" in the process; and that after an association of 32 years, plaintiff, as employer, and Weiss, as employe, entered into a written agreement providing, inter alia, that Weiss would not accept employment with a competitor of plaintiff during a period of two years immediately following any termination of his employment with plaintiff nor would he at any time reveal any of plaintiff's trade secrets. The complaint further avers that approximately nine months after executing the above agreement, Weiss voluntarily left the employ of plaintiff and subsequently, within the two-year period, went to work for plaintiff's competitor, Penn Card.

In support of its demurrer, Penn Card asserts that the complaint avers no consideration for Weiss' promise, that the agreement is contrary to public policy, and that, in any event, Penn Card, not being a party to the contract, is not bound thereby. Both defendants argue in support of their motions for a more specific pleading that plaintiff, in its complaint, must more

fully describe the trade secrets which it is seeking to protect.

In a further attempt to secure more specific information with respect to the alleged trade secrets, defendants filed interrogatories and deposed one of plaintiff's officers. Defendants contend that plaintiff's answers to the interrogatories were too generalized and equivocal to be of any value and further assert that at the deposition hearing, plaintiff's officer, on the advice of counsel, declined to be sufficiently specific with respect to the matter of trade secrets. Defendant Weiss accordingly filed a motion for sanctions, and plaintiff countered with a motion for a protective order. These motions, as well as defendants' preliminary objections were argued before the court en banc.

Plaintiff contended at oral argument that the controversy with respect to plaintiff's unwillingness to reveal its trade secrets in its pleadings and by way of discovery was a "red herring" in that the suit was not instituted primarily for the purpose of restraining the disclosure of trade secrets but rather merely to enforce Weiss' covenant not to accept employment with a competitor. Plaintiff asserts that the reference in the complaint to trade secrets was simply for the purpose of strengthening, substantiating and providing a rational basis for plaintiff's demand that Weiss be enjoined from working for Penn Card. Accordingly, argues plaintiff, proof of trade secrets is not essential to its cause of action.

It must be noted that plaintiff's prayer for relief is somewhat inconsistent with this position in that it asks "that Penn Card be required to account [to plaintiff] for Penn Card's profits resulting from its employment of Weiss *and the revelation by Weiss to Penn*

*Card of trade secrets* belonging to [plaintiff] . . ." (Italics supplied.) However, since plaintiff appears willing to abandon so much of its action as must depend upon the existence of trade secrets, we shall proceed upon that basis.

Of course, this development immediately raises the question as to what is meant by "trade secrets" in the present context and also the question as to whether plaintiff can maintain its action independent of the "trade secrets concept." We shall first address ourselves to these questions.

There is some indication in the language of the court in Morgan's Home Equipment Co. v. Martucci, 390 Pa. 618, 631 (1957), that the protection of an employer against the possible disclosure by his employe of the employer's trade secrets constitutes the basis for enforcing employe convenants such as the one involved in the instant case.* An examination of subsequent cases, and particularly Van Products Co. v. General Welding and Fabricating Co., 419 Pa. 248, 260 (1965), will reveal that the term "trade secrets" is used in two different contexts; that is, trade secrets in the strict sense (sometimes called *particular* trade secrets) and trade secrets in general sense. Trade secrets in the strict sense are thus defined in Restatement, Torts, sec. 757, Comment (b):

"A trade secret may consist of any formula, pattern,

---

* In this connection, the court said: "An employe may receive specialized training and skills, and learn the carefully guarded methods of doing business which are the trade secrets of a particular enterprise. To prevent an employe from utilizing such training and information in competition with his former employer, for the patronage of the public at large, restrictive covenants are entered into. They are enforced by the courts as reasonably necessary for the protection of the employer."

device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it . . ."

Conversely, *general* trade secrets are the general experience, knowledge, memory, skill and other subjective knowledge which an employe obtains in the course of his employment. Particular trade secrets are subject to protection at common law completely independent of any contractual obligation. On the other hand, general trade secrets are not the property of the employer, and the employe's use of them is not to be curtailed unless through some restrictive covenant entered into with the employer: Van Products Co. v. General Welding and Fabricating Co., supra, at page 260. See also Capital Bakers, Inc. v. Townsend, 426 Pa. 188 (1967).

We thus conclude that an employer may, in the proper instance, maintain an action in equity to enjoin a former employe from associating himself with a competing employer even though the disclosure or imminent disclosure of trade secrets in the strict sense is not at issue. Therefore, if, as plaintiff argues, its action is not dependent upon the existence of *particular* trade secrets, or, in the alternative, if it is willing to abandon so much of its action as is dependent upon the existence of particular trade secrets, there would seem to be no purpose in compelling plaintiff to make further disclosure with respect to such secrets either by way of a more specific pleading or by way of discovery.

In view of the foregoing, defendants' motions for a more specific pleading will be denied. Further, the motion of defendant Weiss for sanctions to compel the specification of further details of plaintiff's trade secrets will be granted to the extent of prohibiting

plaintiff from introducing at trial any evidence pertaining to particular trade secrets, that is to say, trade secrets in the strict sense as above described. In view of the foregoing, no disposition need be made of plaintiff's motion for a protective order.

We turn next to the demurrer of defendant Penn Card. While defendant Weiss did not demur to the complaint, all but one of the legal issues raised by Penn Card's demurrer are equally applicable to Weiss. We first direct our attention to that issue which does not apply to Weiss, viz., whether Penn Card, not being a party to the contract between plaintiff and Weiss, is bound thereby. The crucial question is not whether Penn Card is "bound" by the contract but rather whether plaintiff has a remedy against Penn Card for inducing Weiss to breach the contract. There is no doubt but that one who intentionally interferes with an existing contractual relationship is subject to liability for the breach and that this rule is applicable to employment contracts: Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177 (1965). Plaintiff, under the proper circumstances, may also be entitled to injunctive relief: Morgan's Home Equipment Corp. v. Martucci, supra, at page 635. Whether plaintiff can bring itself within those circumstances warranting injunctive relief cannot be determined at this stage of the proceedings, nor can it be determined at this point whether other general equitable relief would be appropriate. In any event, Penn Card's not being a party to the contract does not necessarily shield it from liability.

Penn Card also urges that the complaint is defective in that it fails to set forth facts showing a legally sufficient consideration to support Weiss' promise. If, in fact, the complaint does fail to allege facts giving rise to consideration, it is fatally defective: Porta

v. American Bank and Trust Co. of Pennsylvania, 12 Lebanon 469, 48 D. & C. 2d 523 (1970). However, in return for Weiss' promise, plaintiff agreed to compensate Weiss, under certain conditions, during the period of his "enforced unemployment" under the contract. This undertaking of plaintiff is set forth in the written agreement attached to plaintiff's complaint and furnishes legal consideration for Weiss' promise. Incidentally, Penn Card does not press this particular argument in its brief, and it may well have been abandoned.

The third basis advanced in support of Penn Card's demurrer is that the restrictive covenant on which plaintiff relies is contrary to public policy. Defendant does not, in its preliminary objections, indicate with any great degree of specificity in what respect the covenant in question contravenes public policy, and this failure probably constitutes poor pleading. See Revlon, Inc. v. Capitol Beauty Supply Co., 79 Dauph. 91, 99 (1962). However, plaintiff does not challenge this lack of specificity but rather meets defendants' argument on its merits. Accordingly, we shall ignore the lack of specificity.

Defendant Penn Card states in its brief that the basis for the argument that the restrictive covenant is contrary to public policy is its contention that the covenant is not "ancillary" to a contract of employment. There is no question but that historically all covenants to refrain from practicing a trade were held to be void as against public policy (Morgan's Home Equipment Corp. v. Martucci, supra, at p. 627); that this doctrine has been somewhat modified to conform with the realities of modern economic life (ibid); but that even under present day law, such a covenant is not enforceable in equity unless the covenant is ancillary to a contract of employment: Jacobson & Com-

pany, Inc. v. International Environment Corporation, 427 Pa. 439 (1967); Capital Bakers v. Townsend, supra; Beneficial Finance Company v. Becker, 422 Pa. 531 (1966); Barb-Lee Mobile Frame Company v. Hoot, 416 Pa. 222 (1965); Morgan's Home Equipment Corp. v. Martucci, supra.

It should be noted preliminarily that the concept of consideration and the concept of "ancillariness," while sometimes seemingly treated as being similar or even perhaps identical (see Beneficial Finance Corporation v. Becker, supra, at page 536), are entirely different: Jacobson & Company, Inc. v. International Environmental Corporation, supra, at page 449, and also at page 451; Capital Bakers v. Townsend, supra, at pages 191, 192.

What is the meaning of the term "ancillary" as applied to this case? The common meaning of the word is "subordinate" (see Webster's New World Dictionary, 2d College Ed. 1970), and the term has a similar meaning in the context of restrictive covenants. In Jacobson & Company, Inc. v. International Environmental Corporation, supra, the court, quoting prior authority, said, at page 448:

". . . In *Addyston,* [United States v. Addyston Pipe & Steel Co., 85 Fed. 271 (Sixth Circuit, 1898), aff'd. 175 U.S. 211 (1899)] the leading American case on the subject, the Sixth Circuit through Judge TAFT (later Chief Justice of the United States) discussed the reasons for the 'ancillary' rule: '[The] very statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant is restraint of trade is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. The main pur-

pose of the contract suggests the measure of protection needed, and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined . . . But where the sole object of both parties in making the contract as expressed therein is merely to restrain competition, and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly, and therefore would be void . . . There is in such contracts no main lawful purpose, to subserve which partial restraint is permitted, and by which its reasonableness is measured, but the sole object is to restrain trade in order to avoid the competition which it has always been the policy of the common law to foster."

Penn Card argues that Weiss' covenant could not have been ancillary to his contract of employment with plaintiff because Weiss had been employed by plaintiff for 32 years prior to the execution of the noncompetition agreement. Jacobson, supra, agrees that such a covenant, to be ancillary and thus enforceable, must be executed contemporaneously with a contract of employment but that the contract of employment in question need not mark the *initial* employer-employe relationship established between the parties. See discussion at pages 449, 450.

However, we are not in a position in any event, with the case in its present posture, to rule on this question. As mentioned previously, the "ancillary problem" is one related to public policy, and defendant Penn Card recognizes this relationship in arguing this point under the general public policy objection of its demurrer. The Jacobson case, in particular, treats the "ancillary rule" as a public policy consideration as evidenced from the following language found at pages 447, 448, which reads as follows:

"Appellants next contend that no valid restrictive covenant was entered into because the alleged covenant was not ancillary to the employment contract. The 'ancillary' rule was repeated by this court in Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 629, 136 A. 2d 838 (1957): 'It has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged therein.' "

Penn Card's basic position, then, is that Weiss' promise is unenforceable as contrary to public policy. What Penn Card fails to recognize is that this defense, being in essence the defense of illegality, must be affirmatively pleaded pursuant to the requirements of Pennsylvania Rule of Civil Procedure 1030. For authority to the effect that defenses such as the unconscionability of contracts and their contravention of public policy constitute affirmative defenses and must be pleaded as such, see Fredericks v. Hamm, 45 D. & C. 2d 687, 690 (1968), and Revlon, Inc. v. Capitol Beauty Supply Company, supra, at page 99.

Similarly, the reasonableness of the temporal and geographical limitations on restrictive covenants (also a matter of public policy) have always been regarded as a matter of defense to be pleaded and proved by defendant: Plunkett Chemical Company v. Reeve, 373 Pa. 513, 515 (1953); Harris Calorific Company v. Marra et al., 345 Pa. 464, 468, 469 (1942). In further support of this conclusion is the fact that none of the cases holding that a restrictive covenant was void as not ancillary to a contract of employment has been decided on preliminary objection.

It is apparent, therefore, that Penn Card's contention that Weiss' covenant is void as not being ancillary

to a contract of employment is a matter which must be pleaded as an affirmative defense and that the issue cannot be reached on demurrer. Accordingly, Penn Card's demurrer must be dismissed in its entirety.

## ORDER

And now, March 13, 1972, (1) defendants' preliminary objections in the nature of a motion for a more specific pleading are dismissed; (2) defendant Weiss' motion for sanctions is granted to the extent that plaintiff is prohibited from introducing at trial, any evidence pertaining to trade secrets in the strict sense; (3) defendant Penn Card's preliminary objections in the nature of a demurrer are overruled; and (4) defendants are directed to file their respective answers to plaintiff's complaint within 20 days of the date of this order.