J-A18040-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 134 WDA 2017 |
| BEEMAC TRUCKING, LLC AND BEEMAC LOGISTICS, LLC | : | |

Appeal from the Order December 22, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s):  No.  11571-2016

BEFORE:   BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:                      FILED MARCH 26, 2018

Pittsburgh Logistics Systems, Inc. (PLS) appeals from the order entered December 22, 2016 granting in part and denying in part its petition for a preliminary injunction against BeeMac Trucking, LLC and BeeMac Logistics, LLC.[1]  PLS sought injunctive relief  to enforce a non-solicitation provision and a no-hire provision in its contract with BeeMac Trucking, LLC[2] (BeeMac).[3]  The trial court upheld the non-solicitation provision but invalidated the no hire

_____

[1] Pursuant to Pa.R.A.P. 311(a)(4), an order denying a preliminary injunction represents an interlocutory appeal as of right.

[2] See Hearing Exhibit X, Sections 14.3 and 14.6.

[3] Although BeeMac Trucking and BeeMac Logistics are both named in the complaint, only BeeMac Trucking is at issue herein.  Accordingly, BeeMac will refer only to BeeMac Trucking.

provision as against public policy. In this timely appeal, PLS claims the trial court erred in finding the no hire provision to be unenforceable. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.[4]

Our standard of review for an order granting or denying a preliminary injunction is as follows:

> We have emphasized that our review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential". Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount Inc., 573 Pa. 637, 828 A.2d 995, 1000 (2003). This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." Id. We will find that a trial court had "apparently reasonable grounds" for its denial of injunctive relief where the trial court has properly found "that any one of the following 'essential prerequisites' for a preliminary injunction is not satisfied." Id. at 1002.
>
> There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the

_____

[4] This appeal is related to PLS v. Ceravolo, et al, 135 WDA 2017, listed at J-A18041/17, regarding restrictive provisions of PLS's employment contracts with employees. In this appeal, we found the restrictive covenant in the employees' work contract to be unenforceable, as overbroad, against public policy, and as being oppressive.

wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest." Id. at 1002. The burden is on the party who requested preliminary injunctive relief[.]

Warehime v. Warehime, 860 A.2d 41, 46-47 (Pa. Super. 2004) (footnotes omitted).

On August 30, 2010, BeeMac Trucking, LLC and PLS entered into a Motor Carriage Services Contract.[5] In relevant part, the contract states:

> 14.3 The parties acknowledge that during the term of this Contract there may be disclosed to CARRIER [BeeMac Trucking, LLC] confidential information concerning PLS' operations including, but not limited to, the names and addresses of Shippers and others who are clients of PLS, volumes of traffic and rate data. During the term of this Contract and for a period of one year after termination of this Contract, CARRIER hereby agrees that it will not, either directly or indirectly, solicit any individual Shipper or other client of PLS, back-solicit and/or transport for itself, without the involvement of PLS, any freight that CARRIER handles pursuant to this Contract or freight which becomes known to CARRIER as a result of CARRIER'S past, present or future dealings with PLS.
>
> ...
>
> 14.6 CARRIER agrees that, during the term of this Contract and for a period of two (2) years after the termination of this Contract, neither CARRIER nor any of its employees, agents, independent contractors or other persons performing services for or on behalf of CARRIER in connection with CARRIER's obligations under this Contract will, directly or indirectly, hire, solicit for employment, induce or attempt to induce any employees of PLS or any of its Affiliates to leave their employment with PLS or Affiliate for any reason.

_____

[5] Pursuant to section 2.1 of the contract, the term of the contract is for one year and is automatically renewable.

Exhibit H, Motor Carrier Services Contract, Sections 14.3, 14.6.

Pursuant to the complaint filed by PLS, on November 29, 2016, Racquelle Pakutz left PLS's employ on November 10, 2016 and accepted employment with BeeMac Trucking, LLC on November 22, 2016. Similarly, Michael Ceravolo and Natalie Hennings left PLS's employ on November 14, 2016 and accepted employment with BeeMac Trucking, LLC on November 15, 2016.[6] PLS argues that BeeMac's employment of Ceravolo, Pakutz and Hennings constitutes a breach of the Motor Carriage Service Contract. PLS sought injunctive relief preventing BeeMac from employing Ceravolo, Pakutz and Hennings and also preventing BeeMac from encouraging or permitting the three ex-PLS employees from soliciting any business from PLS customers.

In denying PLS injunctive relief regarding the no-hire provision, the trial court determined that such a provision has never been upheld in Pennsylvania; indeed, this provision may never have been the subject of litigation. The trial court agreed with the logic of those states which do not allow such provisions between companies, and determined that this provision would violate public policy by preventing persons from seeking employment with certain companies without those persons receiving additional consideration, or even necessarily having any input in or even knowledge of

---

[6] Ceravolo claims to be employed by Hybrid Global Logistics Services, LLC (Hybrid), a company of which he is a part owner, not BeeMac. Deposition of Ceravolo, 12/8/2016 at 198.

the restrictive provision. Additionally, the trial court reasoned that the no-hire provision was overly broad in that the non-solicitation provision acted to protect PLS from the loss of its clients, which was the ultimate purpose of the restrictions. Based upon the nature of our review, we agree with the trial court.

The trial court set forth its reasoning regarding the restrictive provisions of the Motor Carriage Services Contract as follows: [7]

> We now address the terms of the Motor Carrier Services Contract (Carrier Contract) between PLS and BeeMac Trucking. PLS is seeking an injunction with respect to two of the provisions of this contract, namely section 14.3, the non-solicitation of PLS customers, and section 14.6, the no-hiring of PLS employees. We will address each of these provisions.
>
> First, with respect to section 14.3 of the parties' Carrier Contract, we note that such restrictions on trade are not always favored by the courts. Indeed, the Pennsylvania Supreme Court acknowledged that "it has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged." Jacobson & Co. v. Int'l Environ. Corp., 235 A.2d 612, 617 (Pa. 1967). However, certain restrictive covenants are valid if they are ancillary to the main purpose of the contract. Id. The covenant must be inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. Id. The main purpose of the contract must suggest the measure of protection needed, and furnish a sufficiently uniform standard by which the validity of such a restraint may be judicially determined. Id. We believe that the restrictive covenant in section 14.3 of the Carrie[]r Contract meets

_____

[7] We recite the entire reasoning of the trial court, including those portions of the contract the trial court endorsed. We believe this is useful to provide the context of the trial court's decision.

- 5 -

these requirements; it was ancillary to the main purpose of the agreement and was necessary to protect PLS's interest in its customers.

In the instant case, the covenant contained in section 14.3 furthered PLS's legitimate interest in preventing BeeMac from cutting PLS out of the equation. Courts have held that a business's customers are a protectable interest. See Sidco Paper Co. v. Aaron, 351 A.2d 250, 254, 257 (Pa. 1976) (holding that "Sidco clearly has a protectable interest in customer goodwill" and "properly used a restrictive covenant to protect its customer relationships"); see also Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 112-[1]14 (3d. Cir. 2010) (noting that Pennsylvania law protects non-technical trade secrets).

PLS offered evidence that the customers listed on Exhibits N and 12 were its customers, by showing receipts for shipments made. BeeMac could not establish similar, prior, direct dealings with these clients. As such, we will uphold the provisions of section 14.3, and allow the injunction to [sic] prohibiting BeeMac from soliciting these customers for one year to remain in effect.

Turning to section 14.6 of the Carrier Contract, which prohibits BeeMac from hiring former employees of PLS for a period of two years following the termination of the Carrier Contract, we believe that provision constitutes an unfair restraint on trade. We believe this no-hire provision exceeds the necessary protection PLS needs to secure its business, and is void as a matter of public policy.

Pennsylvania courts have addressed the appropriateness of non-compete clauses between employers and employees, but there is no case law in Pennsylvania on the issue of no-hire restrictive covenants between contracting companies. Some states have held that these types of agreements are void against public policy. See, e.g. Heyde Cos. V. Dove Healthcare, LLC, 654 N.W.2d 830 (Wis. 2002); and see VL Sys., Inc. v. Unisen, Inc., 61 Cal. Rptr. 3d 818 (Cal. Ct. App. 2007).[8] Other states

_____

[8] In Heyde, supra, the restrictive covenant between companies was unenforceable because there was no proof that the employee knew of the clause and there was no similar clause in the employee's work contract. Here,

have held that these provisions are a permissible partial restraint of trade, and are thus not void against public policy. See, e.g. Ex parte Howell Eng'g & Surveying, 981 So.2d 413 (Ala. 2006); and see H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc., 805 N.E.2d 1177 (Ill. 2004).

We believe these types of no-hire contracts should be void against public policy because they essentially force a non-compete agreement on employees of companies without their consent, or even knowledge, in some cases. We believe that if an employer wishes to limit its employees from future competition, this matter should be addressed directly between the employer and the employee, not between competing businesses. Moreover, in this case, such restriction goes beyond the protected interest of PLS, which is its customers. So long as the former employee, or any employee of BeeMac, does not contact former customers of PLS, for the time period in the contract, in this case one year under section 14.3 of the Carrier Contract, there is no need to enforce the no-hire provision contained in section 14.6. For these reasons, we do not believe PLS has a substantial likelihood of success on the merits of its claim under section 14.6, and we will vacate the injunction prohibiting BeeMac Trucking from hiring former PLS employees.

Trial Court Opinion, 12/22/2016, at 11-14.

_____

there is no proof that the employees knew of the clause between the companies. While there was a restrictive covenant in the employees' contracts, we have determined it was unenforceable as being oppressive or an attempt to foster a monopoly, thereby demonstrating unclean hands on the part of PLS. See PLS v. Ceravolo, supra. It would be incongruous to strike the employees' restrictive covenant, finding PLS to have had unclean hands, yet allow PLS to achieve the same result via the contract between companies. In VL Systems, supra, the California court found the restrictive clause between companies to be overbroad, applying to any VL Systems employee regardless of that person's contact with the other company, as well as against the policy of favoring employee mobility. The clause at issue herein is similarly overbroad, preventing any PLS employee from working for any PLS client.

The trial court supported its decision by examining various decisions from other jurisdictions and concluding the reasoning of those cases that disfavor such restrictions better approximate the current state of Pennsylvania law. Our duty in reviewing this decision is to determine whether the trial court's decision is based upon "any apparently reasonable grounds." Warehime, supra. We have reviewed the certified record, the submissions by the parties and the trial court's reasoning and find that this decision is, in fact, based upon reasonable grounds.

Further, the cases supporting such inter-company restrictions tend to examine and uphold narrowly tailored restrictions. For example, in H & M Commercial Driver Leasing, supra, the provision at issue prevented Fox Valley from hiring only those drivers who had been supplied to Fox Valley by H & M. It did not prevent Fox Valley from hiring any driver who had worked for H & M. Here, section 14.6 prevents BeeMac from hiring any PLS employee. Additionally, section 14.6 not only prevents BeeMac from hiring any PLS employee, but it also seeks to prevent any other entity, such as independent contractors of BeeMac, from hiring PLS employees. By the plain reading of the language of this restrictive provision, it was meant to be applied in the broadest possible terms. These facts, coupled with the trial court's finding that section 14.6 was largely superfluous in light of the non-competition clause, supports our determination that this aspect of the trial court's decision was based upon reasonable grounds.

Next, the trial court found that section 14.6 violated public policy by preventing non-signatories from exploring alternate work opportunities. An apt example of how such covenants can produce harm is demonstrated by the following application of section 14.6. The PLS Motor Carrier Services Agreement ostensibly prevents the other signing company from hiring any PLS employee for the term of the agreement, which is self-renewing, and two years thereafter. Accordingly, each new client of PLS, upon signing the Motor Carrier Services Contract, results in a new restriction upon current employees from obtaining new employment in the same or similar field of work. Employment restrictions are allowed, under certain circumstances, between employer and employee. However, in those instances, when a new restriction is added, to be enforceable, it must be supported by additional consideration. See generally, Insulation Corp. of America v. Brobston, 667 A.2d 729 (Pa. Super. 1995); Modern Laundry & Dry Cleaning Co. v. Farrer, 536 A.2d 409 (Pa. Super. 1988). If the section 14.6 restriction, between companies, is allowed, then PLS would essentially be evading the requirement to pay additional consideration in exchange for additional restrictions. This example, viewed with the trial court's reasoning, demonstrates this aspect of its decision is also based upon reasonable grounds.

The scope of our review for a preliminary injunction is simply to determine if the trial court's ruling regarding injunctive relief had a sound basis, even if ultimately the provisions are approved. Our review finds the

trial court's ruling in this matter is reasonably based. See Warehime, supra.

Accordingly, we affirm the order of December 22, 2016 as it applies to the

Motor Carrier Services Agreement between PLS and BeeMac.

Order affirmed.

Judge Lazarus joins this memorandum.

Judge Bowes files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/2018