Pennsylvania Funds Corporation, Appellant, *v.*
Vogel.

Argued January 8, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused April 19, 1960.

*O. Jacob Tallman,* with him *Robert L. Trescher,* and *Forman and Rosenberg,* and *Butz, Hudders, Tallman & Rupp,* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*Paul A. McGinley,* with him *William E. Schantz,* for appellees.

OPINION BY MR. JUSTICE EAGEN, March 22, 1960:

Weston Charles Vogel, the individual defendant-appellee, prior to his graduation from college sometime in March 1953, became affiliated with First Investors' Corporation, predecessor of appellant, in the capacity of a salesman as an independent contractor. From July 1, 1954, the date upon which appellant corporation became activated, to January 13, 1956, Vogel served as manager of Pennsylvania Funds without a written contract. On the latter date, for the first time, he acquired the status of an employee of appellant by entering into a formal written contract, and it is the legal effect of certain provisions thereof which forms the basis of this issue.

On June 30, 1958, Vogel by resignation terminated his employment with appellant. Almost immediately, he became the president, a director and a principal stockholder of the Income Planning Corporation, defendant corporate appellee, engaged in direct competition in the securities field to the business of his former employer.

Alleging violation of certain restrictive clauses in the employment contract, executed between the appellant and Vogel, this action in equity was instituted. The lower court found that the covenants had clearly been violated but awarded only partial relief. This appeal ensued.

An examination of the record discloses that the questions for decision are two: Should the appellees have been enjoined from selling shares of mutual fund, periodic payment plans or paid-up plans to the public-at-large until July 1, 1960? Did the lower court err in not incorporating in its decree an order directing defendants to sever their contractual relations with former employees of appellant, when one of the court's conclusions of law *specifically* stated that appellant was entitled to such relief?

Specifically, appellee, Charles Weston Vogel, by the contract of January 13, 1956, covenanted and agreed that: "(b) He will not during the term of this contract, and for a period of two years after termination hereof, for himself, or as agent of, or on behalf of, any person, association, partnership, or corporation, directly or indirectly, within the State of Pennsylvania, engage in the sale of, or in the business of the sale of mutual fund shares, periodic payment plans or paid-up-plans, except on behalf of the company during the term of this contract."

Deferring, for the moment, consideration of the legality of the above-quoted restrictive covenant, let us

proceed to review the seemingly unceasing efforts of the appellee, Vogel, to ignore it. These findings of fact appear in the lower court's opinion: "7. On or about June 30, 1958, the defendant, Mr. Vogel, terminated his employment with Pennsylvania Funds, under and subject to the terms and conditions of the aforesaid contract of employment, including the covenants against competition.

"8. As early as May 5, 1958, Weston Vogel discussed with one R. W. Graham, then District Manager of Plaintiff for New Jersey, the formation of defendant corporation, and the two on June 24, 1958, prepared and executed papers for the incorporation of defendant corporation. On June 30, 1958, both Graham and Vogel resigned as District Managers for their respective districts.

"9. During the summer of 1958, Weston Vogel and one Thomas Heslop visited several of the salesmen for Pennsylvania Funds and discussed with them the formation of defendant corporation. Coincident with the resignation of these salsmen from Pennsylvania Funds, Weston Vogel wrote to Pennsylvania Funds for clearance of these salesmen for registration with defendant corporation.

"10. At the time of the hearing 14 men formerly employed by Pennsylvania Funds had resigned and found employment with defendant corporation. Several of these had been interviewed by Weston Vogel immediately prior to their change of employment. All of these men had received training and experience under Pennsylvania Funds.

"11. Weston Vogel and Income Planning Corporation qualified as broker-dealers on September 25, 1958, and have been so dealing in competition with Pennsylvania Funds since that date."

Having thus seen that the pertinent restrictive covenant received no respect in fact from appellees, it is

necessary next to ascertain whether it is supported by legal consideration. This query is affirmatively settled by the learned trial judge's fifth and sixth findings of fact:

"5(b) Simultaneously with the execution of the contract described in Finding No. 5, defendant, Weston Vogel, delivered to plaintiff a letter as follows:

'Dated. . . . .

'Douglas K. Porteous, President
Pennsylvania Funds Corporation
Philadelphia, Pennsylvania

'Dear Mr. Porteous:

'I have carefully read the terms and provisions of the within District Manager's Agreement, as well as of the Pennsylvania Funds Corporation Profit-Sharing Retirement Plan and Trust Agreement forming a part of same.

'I understand the fact that, prior to the effective date of the Agreement, my services to the Company were rendered as an independent contractor, and not as an employee; and I hereby acknowledge the following additional and valuable benefits to me and detriments to the Company that will become effective in consequence of my new status under the Agreement as an employee of the Company:

'1. The Company will, during the term of the Agreement, be required to pay Unemployment Compensation Tax on my compensation, and I will become entitled to benefits under the Pennsylvania Unemployment Compensation Law.

'2. The company will also be required to pay Social Security taxes on my compensation, and I will become entitled to benefits under the Federal Old-Age Benefits system.

'3. I will become eligible to become a participant in the "Pennsylvania Funds Corporation Profit-Sharing

Retirement Plan" in accordance with the terms of said Plan, and Trust Agreement forming a part thereof, dated December 30, 1955, and any subsequent amendments thereto.'

"6. As an additional consideration for entering into the employment contract with the plaintiff, the defendant, Mr. Vogel, was made a participant in the 'Pennsylvania Funds Corporation Profit Sharing Retirement Plan,' effective upon the signing of the said employment contract. In reliance on the validity and integrity of the restrictive covenants contained in the employment contract, plaintiff made substantial contributions to the profit sharing retirement plan. Upon his resignation from plaintiff corporation, defendant Vogel lost all of his credits in the profit-sharing plan. Plaintiff has incurred considerable expense in maintaining its training program for district managers and salesmen. Much of the time of the officers and staff of plaintiff is devoted to helpful supervision and continuing education of its associates in the securities."

Finally and as dispositive of the issue of legal consideration, we quote with approval the following discussion of the lower court: "The first objection is based upon the proposition that Vogel was a district manager employed by the plaintiff prior to the date of the agreement and that therefore this was not a contract upon the inception of employment. The evidence, however, indicates that his previous employment had been at will and was as an independent contractor and not as an employee. The agreement, therefore, does mark the inception of a new employer-employee relationship. We cannot say to what extent the financial arrangement differed from the former oral employment but surely the assumption of unemployment and social security taxes and contributions to the pension plan, acknowledged in a letter incorporated into the agreement, as well as a seal, import consideration. That termination

of employment after two years involved forfeiture of pension rights does not avoid its use as consideration at the inception of the contract."

The final decree entered below, though favorable to the appellant, did not award all the relief to which appellant was entitled. By that order, the individual defendant was enjoined *not* from engaging in the sale of, or in the business of the sale of mutual fund shares, periodic payment plans or paid-up-plans to the *public-at-large* but only "to any persons who were customers or prospective customers of plaintiff during any period when defendant was employed by the plaintiff." This was error. It is perfectly clear that the lower court, in failing to grant injunctive relief to the extent called for by the pertinent restrictive covenant, felt itself powerless so to do because of the decision of this Court in *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957). We are disinclined to allow *Morgan's Home* to shelter the instant appellees. To do so would be to extend the "more stringent test" rule there announced to a point never intended. In addition, we consider the test satisfied by the extraordinary and distinguishable facts present herein. In *Morgan* the record disclosed "no evidence that the employees received any special training or insight into methods of doing the business of the plaintiff company which would make it inequitable to have them compete with the plaintiff for the patronage of the public-at-large." However, the court below in this case found as a fact:

"4. Plaintiff has expended considerable sums of money and time in creating good will and *in maintaining an extensive and continuous training program for its employees and salesmen* and, as a result of its policy of public relations and continuing education for its employees and salesmen in the securities field, it has become a substantial and well established retail dealer of

mutual funds in Pennsylvania. Much of the *training literature and instruction is tailored to problems unique to the sale of mutual fund shares* and was especially prepared by Douglas K. Porteous, President of Pennsylvania Funds, who has had wide experience in the sale of securities and is *a recognized authority* in the field." (Emphasis supplied).

"12. The aforementioned activities of the defendant have caused and threaten to continue to cause irreparable damage to plaintiff's business and impair and destroy plaintiff's valuable good will, and negate the efforts and moneys invested in plaintiff's employee training program. . . ." Again unlike the individual Martucci, Vogel did not leave the service of his employer to take work as an employee. Here, Vogel "went off on his own" and founded a competitive corporation into which he enticed no fewer than fourteen men trained and employed by appellant.

It remains to determine the extent to which the general covenant not to compete is enforceable against him. Of course, for such restrictive covenants in an employment contract to be enforceable, they must be, inter alia, reasonably necessary for the protection of the employer *without imposing undue hardship on the employee*: Restatement, Contracts, §516(f). The lower court feared that to enforce the general covenant in the contract concerned would impose an unreasonable hardship upon Vogel. It should be noted that the restrictive covenant herein does not purport to prevent appellee Vogel from selling securities and stocks other than mutual funds. It is specifically delimited to the sale of "mutual fund shares, periodic payment plans or paid-up-plans." Is it to be feared, were the covenant specifically enforced against him, that Vogel would be "prevented from practicing his trade or skill, or from utilizing his experience in the particular type of work with which he is familiar?" Is it reasonably to be ex-

pected that he "may encounter difficulty in transferring his particular experience and training to another line of work" and that, as a result, "his ability to earn a livelihood is seriously impaired?" We think not. (See discussion of Mr. Justice COHEN as to situations that present such unreasonable hardships: *Morgan's Home Equipment Corp. v. Martucci*, supra, p. 632). Moreover, Income Planning Corporation is chartered to sell life insurance and has a contract for that purpose with U. S. Life Insurance Company and is also designed to sell accounting services. As admitted by Vogel at the hearing, "Actually, our Charter is quite broad."

Considerations engendered by a close examination of the record prompt us to ask: (1) since when must courts of equity feel compelled to lift from wrongdoers contractual obligations which they freely assumed; (2) since when may not innocent and irreparably-harmed parties to a valid contract reasonably expect equitable relief, especially when, as here, there is a finding by the court that, "15. Plaintiff has no adequate remedy at law and injunctive relief is necessary"?

We conclude that the lower court committed no error in refusing to incorporate in its decree a conclusion that appellant was entitled to an order directing appellees to sever their contractual relationship with all former employees of appellant. The effect of the decree to be entered in this case will be to restrain these employees, qua employees of Income Planning Corporation, from engaging in the type of activity which the contract of January 13, 1956, was intended to proscribe.

Accordingly, the record is directed to be returned to the court of Lehigh County for the purpose of entering a decree consonant with this opinion. Costs to be paid by the appellees.

Mr. Justice COHEN concurs in the result.