528 A.2d 1351

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellant,**

v.

**James R. MOOSE, Robert L. Beard and James A. Rohrbaugh, Appellees.**

Superior Court of Pennsylvania.

Argued April 1, 1987.

Filed July 13, 1987.

Gregory S. Rubin, Paoli, for appellant.

Thomas M. Campbell, Harrisburg, for appellees.

Before WIEAND, BECK and CERCONE, JJ.

WIEAND, Judge:

James R. Moose, Robert L. Beard, and James R. Rohrbaugh became employees of Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) in late 1983 and early 1984.[1]

---

1. Moose joined Merrill Lynch on November 8, 1983, Beard on May 22, 1984, and Rohrbaugh on May 19, 1984.

At the time of commencing employment, each employee executed a written employment agreement which contained, inter alia, a restrictive covenant by which the employee agreed that for a period of one year after termination of his employment he would not solicit any of Merrill Lynch's customers whom he had serviced or whose name he had learned during his employment by Merrill Lynch. These agreements also provided that all records of Merrill Lynch, including the names and addresses of its customers, were to remain the employer's property and could not be copied or duplicated without its permission. Moose, Beard, and Rohrbaugh were trained by Merrill Lynch as commodities brokers, and they worked in the Merrill Lynch Commodities Department for central Pennsylvania until May 30, 1986, when they resigned and joined E.F. Hutton, a competitor.

In June, 1986, Merrill Lynch filed a complaint in equity against its former employees and requested, inter alia, a temporary restraining order prohibiting them from competing with it in central Pennsylvania. The trial court, on June 9, 1986, entered an ex parte order restraining Merrill Lynch's former employees from soliciting or accepting any customers of the Merrill Lynch Commodities Department who had been serviced by the former employees or whose name had become known to them while in the employ of Merrill Lynch. On June 11, 1986, the court amended its prior order, again acting ex parte, to permit the former employees to "accept" business from Merrill Lynch's customers but enjoining them from "soliciting" business from such persons. The former employees responded to the complaint against them by filing a petition to compel Merrill Lynch to arbitrate the dispute in accordance with the by-laws of the New York Stock Exchange, to which Merrill Lynch had subscribed, and to stay further court proceedings until the arbitration proceedings were completed. This petition was consolidated with Merrill Lynch's motion for preliminary injunction, and both were heard by the trial court on June 19, 1986. At the conclusion thereof, the trial court entered an order directing arbitration and continuing

the preliminary injunction, as modified, until the arbitration proceedings had been concluded. Merrill Lynch appealed.[2]

Merrill Lynch contends that the trial court erred when it ordered Merrill Lynch to submit to arbitration before the New York Stock Exchange (NYSE). It argues that (1) no express agreement to arbitrate existed in the employment contract between Merrill Lynch and its former employees, and (2) the dispute did not arise out of Merrill Lynch's business and therefore was not subject to the arbitration provisions of the New York Stock Exchange. We will examine these contentions carefully, for they present issues of first impression in the appellate courts of Pennsylvania.

"It is well settled ... that voluntary arbitration is a matter of contract, and absent an agreement between the parties to arbitrate their disputes, they cannot be compelled to arbitrate." *Gaslin, Inc. v. L.G.C. Exports, Inc.,* 334 Pa.Super. 132, 139, 482 A.2d 1117, 1121 (1984), citing *Hoffman v. Gekoski,* 250 Pa.Super. 49, 53, 378 A.2d 447, 448 (1977). In the instant case, the agreement to arbitrate appears in Merrill Lynch's agreement with the New York Stock Exchange; there is no arbitration clause in the employment contract between Merrill Lynch and its former employees.

Upon becoming a member of the New York Stock Exchange, Merrill Lynch agreed to abide by the Constitution of the New York Stock Exchange and all rules promulgated in accordance therewith. Article IX, § 8 of this Constitution provides that

[n]o person admitted to membership shall be entitled to any privileges thereof until he shall have signed the Constitution of the Exchange, thereby pledging himself to abide by the Constitution. By such signature, he pledges himself to abide by the same as the same has been or shall be from time to time amended, and by all the rules adopted pursuant to the Constitution.

**2.** Merrill Lynch filed a separate appeal from the court's temporary restraining order of June 11, 1986. This appeal, however, was rendered moot by the later hearing and preliminary injunction.

Article VIII, § 1, of the Constitution provides, in pertinent part, as follows:

[A]ny controversy between a non-member and a member ... arising out of the business of such member ... shall at the instance of any such party, be submitted for arbitration, in accordance with the provisions of the constitution and Rules of the Board of Directors.

See also: NYSE Rule 600. This provision has been held to constitute an express agreement to arbitrate, upon which non-member parties may rely to compel arbitration of disputes such as that involved in the instant case. See: *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1288–1289 (8th Cir.1984); *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.,* 114 A.D.2d 165, 171–72, 498 N.Y.S.2d 146, 151 (1986).

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, supra,* where Merrill Lynch had also filed suit against former employees alleging that they, like appellees in the instant case, had wrongfully converted trade secrets and business records and had wrongfully solicited Merrill Lynch's customers, the employees attempted to compel arbitration. The employees' petition was denied by the district court, but, on appeal, the Court of Appeals for the Eighth Circuit reversed. The Court of Appeals observed that several employees were not members of the Stock Exchange but said:

On the other hand, Kadry and Erickson are not members of the NYSE, nor do their employment contracts contain an arbitration agreement. Kadry and Erickson rely primarily on Article VIII of the NYSE Constitution to support their claim for arbitration. Article VIII allows nonmembers to compel arbitration of any controversy "arising out of the business" of a member. Merrill Lynch contends that the employees' reliance on Article VIII is misplaced. Merrill Lynch urges that Article VIII's reference to "business" reflects that the provision's intention is to allow customers, not employees, to compel arbitration. We find, however, that the provision

is not so limited. The article of the Constitution reflects the self-regulation of the securities industry, as well as the effort to provide an integrated method of resolving disputes involving the affairs of the NYSE. We find that Article VIII constitutes an agreement to arbitrate, upon which Kadry and Erickson may rely.

*Id.* at 1288–1289 (footnote omitted).

Merrill Lynch argues, however, that even if non-members can enforce this provision requiring arbitration, the present dispute did not arise out of its business. On the contrary, appellant argues, the present dispute arose because its former employees were attempting to destroy its business. This argument was considered and rejected by the New York Supreme Court in *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., supra.* There, the plaintiff, a securities brokerage firm, had brought suit against four former employees and a competing company which the former employees had formed after leaving the firm's employ. The complaint alleged that the defendants had converted plaintiff's trade secrets and customer lists and had wrongfully solicited plaintiff's customers. Defendants moved for an order to compel arbitration, and the motion was denied by the trial court. On appeal, the New York Supreme Court, Appellate Division, reversed, holding that arbitration was appropriate with regard to plaintiff's claims against all defendants even though two of the defendants were not members of the New York Stock Exchange. The Court said:

> With respect to Keenan and Nolan, Inc., neither of which is an NYSE member, the defendants argue that NYSE rule 600 is applicable. Rule 600 provides:
>
>> "(a) Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and

Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member".

The plaintiff claimed that Keenan stole trade secrets containing information regarding its customers, recruited other of its employees to participate in a conspiracy against the plaintiff, violated a fiduciary duty owed to the plaintiff arising from her employment relationship, conspired with the other individual defendants to engage in acts detrimental to the plaintiff, and committed acts constituting unfair competition. With respect to Nolan, Inc., the plaintiff asserted that this defendant was the vehicle used by the individual defendants to set up their competing business while still in the plaintiff's employ. According to the plaintiff, in the course of establishing Nolan, Inc.'s business and while still employed by the plaintiff, the defendants utilized confidential records and information, began soliciting accounts, and converted customer lists.

Thus, contrary to the plaintiff's assertions that such claims only arose out of the conduct of Nolan, Inc. and the five individual defendants, we find that the controversy does in fact arise from the plaintiff's business....

*Id.* at 171–72, 498 N.Y.S.2d at 151. See also: *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, supra.*

■ In the instant case, it was in the course of Merrill Lynch's business that appellees had been hired and given information which they allegedly converted to their own use. Moreover, all acts forming the basis of Merrill Lynch's complaint related directly to Merrill Lynch's business. We conclude, therefore, that the controversy between Merrill Lynch and its former employees arose out of Merrill Lynch's business.

■ The reasoning adopted by the Court of Appeals for the Eighth Circuit and also by the Supreme Court of New York is persuasive, and we adopt it as our own. The order

of the trial court directing arbitration was appropriate and will be affirmed.

As a general rule, "trial courts are afforded a broad discretion in the granting or refusal of a preliminary injunction after hearing and will be reversed only if such discretion is clearly abused or if the court committed a palpable legal error." *Commonwealth v. Schall*, 6 Pa.Cmwlth. 578, 581, 297 A.2d 190, 191 (1972). See: *Unionville-Chadds Ford School District v. Rotteveel*, 87 Pa.Cmwlth. 334, 336–337, 487 A.2d 109, 111 (1985); *American College of Obstetricians & Gynecologists v. Thornburgh*, 613 F.Supp. 656, 664 (E.D.Pa.1985). Upon appeal, a reviewing court must uphold the trial court's grant or refusal of preliminary relief if it can be sustained upon "any apparently reasonable ground." See: *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 157, 432 A.2d 1375, 1381 (1981); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 371, 301 A.2d 816, 818 (1973); *Pennsylvania Interscholastic Athletic Association v. Greater Johnstown School District*, 76 Pa.Cmwlth. 65, 71, 463 A.2d 1198, 1201 (1983).

Merrill Lynch's objection to the preliminary injunction issued by the trial court in this case is that it was not broad enough and did not restrain the former employees from accepting business which came to them, without further solicitation, from customers of Merrill Lynch. Our review of the record, however, suggests no abuse of discretion by the trial court in fashioning the preliminary injunction. In the first place, the restrictive covenant in the employment contract, which each appellee signed, did not purport to prevent a signer from "accepting" business from customers of Merrill Lynch. Similarly, it did not provide that a former employee would not engage in the commodities business. It provided only that a former employee would "not solicit, for a period of one year ... any of the clients of Merrill Lynch...." In addition, the trial court determined that the persons who would be most affected by a more encompassing order would be the innocent custom-

48

ers of Merrill Lynch who would be denied the privilege of entrusting their commodities business to the broker of their choice. Under these circumstances, the trial court did not abuse its discretion by limiting its restraining order to the "solicitation" of appellant's customers. Because the relief granted by the trial court had a reasonable basis, its order will be affirmed.

Order affirmed.