616 A.2d 1384

DAVIS & WARDE, INC., Appellant,

v.

Nadine TRIPODI, William Darney, and Butler Technologies, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed Oct. 5, 1992.

Reargument Denied Dec. 18, 1992.

Jon G. Hogue, Pittsburgh, for appellant.

Kenneth D. Perkins, Butler, for appellees.

Before CAVANAUGH, WIEAND and HESTER, JJ.

WIEAND, Judge:

In this action by Davis & Warde, Inc. to enforce restrictive covenants in contracts of employment with William Darney and Nadine Tripodi, the trial court refused to enforce the covenants. Its decision was based upon a perceived inadequacy of consideration to support the covenant. Davis & Warde, Inc. appealed. After careful review, we conclude that the consideration was sufficient to validate the restrictive covenants in the contracts of employment. Therefore, we reverse and remand for further proceedings.

Darney, a vice-president, and Tripodi, a top-level salesperson, were deemed key employees of the printing business conducted by Davis & Warde in Pittsburgh. Their responsibilities included marketing, customer contact, sales and distribution of Davis & Warde's products and services. Prior to April, 1989, Davis & Warde created a new specialty division under the name and style of DAWAR Technologies. This entailed the investment of substantial additional capital. In order to protect its investment in the new division, Davis and Warde asked certain key employees to execute written employment contracts which contained, inter alia, restrictive cov-

enants. Darney and Tripodi were offered new duties and responsibilities in the DAWAR specialty division and were asked to sign written contracts of employment. The restrictive covenant contained restrictions pertaining to the use of proprietary information acquired during employment and provided for noncompetition for a period of one year. As an inducement, Darney and Tripodi were offered a cash consideration, a new severance package including two weeks severance pay, and a written guarantee of certain job benefits, including a new and different policy regarding reimbursement for automobile expenses. Darney and Tripodi held the agreements for review for several months and then, in April, 1989, accepted the terms of the written agreement. By the fall of 1990, however, Darney and Tripodi had voluntarily terminated their employment with Davis & Warde and had formed a competing enterprise known as Butler Technologies, Inc. Through this new enterprise they allegedly solicited business from Davis & Warde's customers.

Appellant filed a complaint in equity seeking to enjoin its former employees from competing in violation of their agreements not to do so. It also petitioned for temporary relief in the form of a preliminary injunction. On January 18, 1991, a hearing was held before the motions judge, and a temporary restraining order was entered against Tripodi and Butler Technologies.[1] Because Darney's ill health prevented his attendance and participation, no relief was granted against him.

When Davis & Warde thereafter petitioned for a hearing against Darney, the hearing was assigned to another judge who, with the parties' consent, limited the scope of hearing to

1. The order enjoined Tripodi and Butler Technologies from (a) contacting customers of the appellant; (b) using their knowledge of appellant's business operations, products, and supplies to compete with appellant; (c) disclosing appellant's confidential and proprietary information; (d) inducing appellant's customers to breach any and all agreements with appellant; (e) inducing appellant's customers to do business with Tripodi, BTI, or any other person or entity other than appellant. Appellant posted a $60,000 bond as required by the trial court's order.

the validity of the restrictive covenant.[2] The order of the trial court was as follows:

> The sole issue to be considered is the validity of the employment contracts. A preliminary injunction will issue as to Defendant Darney if [the] Court preliminarily finds for plaintiff on this issue, and [a] preliminary injunction as to Defendants Tripodi and Butler Technologies will remain in full force and effect. Prior preliminary injunction issued as to Defendants Tripodi and Butler Technologies will be dissolved if [the] Court finds for Defendants on this issue.

At the close of appellant's evidence, the trial court invited appellees to move for dismissal, and, when the motion was made, the court entered an order denying the request for preliminary relief.

In reviewing orders involving preliminary injunctions, the Superior Court has said:

> A trial court has broad discretion in granting or denying a preliminary injunction. We will reverse such a decision only if the trial court abused its discretion or committed a palpable legal error. *Merrill Lynch, Pierce, Fenner & Smith v. Moose*, 365 Pa.Super. 40, 47, 528 A.2d 1351, 1355 (1987) (citing, *inter alia*, *Unionville–Chadds Ford School District v. Rotteveel*, 87 Pa.Commw. 334, 336–7, 487 A.2d 109, 111 (1985)). We must uphold the trial court's decision if it can be sustained on "any apparently reasonable ground." *Id.; John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977); *Sidco*

---

**2.** Appellant did not argue to the trial court or to this court that the alleged disclosure of confidential customer information was "in the nature of a 'trade secret' for which an employer is entitled to protection, *independent* of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices." *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 623, 136 A.2d 838, 842 (1957) (citing *Macbeth–Evans Glass Co. v. Schnelbach*, 239 Pa. 76, 86 A. 688 (1913)) (emphasis added). Appellant also did not assert established principles of law which prevent "an employe from using customer contacts as well as confidential customer information to his own advantage by soliciting the customers of his former employer." *Id.*, 390 Pa. at 626, 136 A.2d at 843. Instead, appellant raised only the issue of adequate consideration in the context of a restrictive covenant not to compete.

*Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114 (1982); *Boyd v. Cooper,* 269 Pa.Super. 594, 410 A.2d 860 (1979).

*Bell Fuel Corp. v. Cattolico,* 375 Pa.Super. 238, 244, 544 A.2d 450, 453 (1988), *allocatur denied,* 520 Pa. 612, 554 A.2d 505 (1989).

The employment agreement signed by Darney and Tripodi contained covenants preventing the use of proprietary information acquired during employment. In addition, a noncompetition clause was inserted for a period of one year but without geographic limitations. This covenant provided:

13. *Noncompetition.* The Employer recognizes that the Company is and will in the future be engaged in highly competitive businesses and products. During his employment with the Company and for a period of one year thereafter, the Employee agrees that he will not, directly or indirectly, sell the products of, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any business competitive with the Company or any of its products or services. Further, if the Employee's employment with the Company terminates for any reason, the Employee shall not, for a period of one year from the date of termination, have any business dealings whatsoever, either directly or indirectly or through corporate entities or associates, with any customer or client of the Company or its subsidiaries or any person or firm which has contacted or been contacted by the Company as a potential customer or client of the Company.

 "[I]n order to be enforceable a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory." *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 506–507, 351 A.2d 207, 210 (1976). See also: *Bell Fuel*

*Corp. v. Cattolico, supra,* 375 Pa.Super. at 250, 544 A.2d at 456; *Modern Laundry & Dry Cleaning v. Farrer,* 370 Pa.Super. 288, 291–292, 536 A.2d 409, 411 (1988). In *Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967), the Court recognized the validity of restrictive covenants entered into subsequent to an employee's initial employment. The Court said:

[I]n many instances, including the present case, the insertion of a restrictive covenant in the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant. This is an economic reality, and the law should be influenced by it.

*Id.* at 450, 235 A.2d at 618. When an employee enters into an employment contract containing a covenant not to compete subsequent to employment, however, the covenant "must be supported by new consideration which could be in the form of a corresponding benefit to the employee or a beneficial change in his employment status." *Modern Laundry & Dry Cleaning v. Farrer, supra,* 370 Pa.Super. at 293, 536 A.2d at 411, citing *George W. Kistler, Inc. v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975); *Maintenance Specialties, Inc. v. Gottus,* 455 Pa. 327, 314 A.2d 279 (1974). The adequacy of consideration to support a restrictive covenant is an issue of law. With respect thereto, the courts have stated, "as long as the restrictive covenant is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valid consideration and is therefore enforceable." *Modern Laundry & Dry Cleaning v. Farrer, supra,* 370 Pa.Super. at 293, 536 A.2d at 411, citing *Beneficial Finance Co. v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966).

■ Davis and Warde, as we have already observed, created a new, multimillion dollar specialty division. To protect its

investment and insure the specialty division an opportunity to develop profitably without unfair competition by knowledgeable employees, the company requested Darney and Tripodi, both of whom were employees at will, to sign written contracts of employment containing covenants not to compete.[3] Darney and Tripodi studied the agreements for several months before signing them. It cannot seriously be contended, therefore, that the covenants not to compete were foisted upon unsuspecting employees. Indeed, Darney, a vice-president and the person responsible for the day-to-day operations of DAWAR, and Tripodi, who was responsible for DAWAR's marketing and sales, were not only familiar with DAWAR's operation but had been instrumental in its creation. They, better than most, were aware of their employer's need to limit future competition until the fledgling division could get off the ground. Not only were they offered continued employment with new responsibilities, but each was given a cash payment, a guarantee of certain job benefits, including a favorable change in the employer's automobile reimbursement policy, and a guaranteed severance benefit in the event of termination, all of which were to be incorporated into a written contract of employment. This, in our judgment, is consideration sufficient to

3. It has been argued, correctly, in our view, that an offer of continued employment, with the condition that the employee sign a restrictive covenant, constitutes adequate consideration where there is a preexisting contract of employment terminable at will by either party. *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974) (Manderino and Roberts, JJ., dissenting). "If a restrictive covenant would be valid at the time an employee is first employed, I fail to see any logic to the prohibition against an employer requesting the same covenant subsequent to the employee's initial employment as a condition of continued employment.... Why should an employer who requests a legal restrictive covenant at the time of initial employment have any advantage over an employer who later decides he should have such a restrictive covenant and no breach of any oral or written contract or other illegality is involved." *Id.* at 337, 314 A.2d at 284–285. Under this view, because Darney and Tripodi were employees at will, the appellant could have discharged Tripodi and Darney and hired new employees who could have been required to execute restrictive covenants as part of their contracts of employment. Because this analysis represents a minority view at the present time, we have not relied upon this rationale in the instant case. See: *Maintenance Specialties, Inc. v. Gottus, supra.*

support the written contracts of employment and the restrictive covenants contained therein.

■ The covenant not to compete in the instant case, although limited in time, was not limited geographically. This does not necessarily impair the validity of the covenant, but any relief granted by the trial court must be geographically limited so as not to exceed that which is reasonably necessary to provide the protection for which appellant contracted. See: *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 594–595, 351 A.2d 250, 254–255 (1976) ("where the covenant imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer."); *Bell Fuel Corp. v. Cattolico, supra* (trial court may define geographic scope of covenant after receiving proper evidence upon remand); *Quaker City Engine Rebuilders, Inc. v. Toscano*, 369 Pa.Super. 573, 584–585, 535 A.2d 1083, 1089 (1987) ("In Pennsylvania, an otherwise valid restrictive covenant which is geographically overbroad is 'divisible and enforceable [once it has been limited by the court] to reasonable geographical limits' "; therefore case remanded to trial court to determine reasonable geographic scope of covenant). See also: *Thermo–Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 65–66 n. 9, 596 A.2d 188, 194 n. 9 (1991). On remand, this determination should be made by the trial court.

Because the trial court's refusal to enforce the restrictive covenant was based on an error of law, we are constrained to reverse.

Reversed and remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is not retained.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. The majority rightly declares that if an employer asks an employee to execute a covenant not to compete subsequent to the employee's hiring, the covenant

"must be supported by new consideration which could be in the form of a corresponding benefit to the employee or a beneficial change in his employment status." Majority Opinion at 455, quoting *Modern Laundry & Dry Cleaning v. Farrer*, 370 Pa.Super. 288, 293, 536 A.2d 409, 411 (1988). Given its acceptance of this well-settled rule,[1] the lower court's ruling should be affirmed. The lower court found that the consideration the appellant offered the appellees in exchange for their acquiescence to restrictive covenants in their employment contracts—$100.00, two weeks severance pay, and continued employment—was mere "window dressing" and *de minimus* and thus not adequate consideration for the covenants.[2] While I would not characterize the foregoing consideration as *de minimus*, it certainly does not amount to a

1. The majority opinion states in note 3 that, although it agrees with the minority view expressed by Justice Manderino to the effect that no consideration is necessary to support a covenant not to compete save the employee's continued employment, *see Maintence Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974) (Manderino and Roberts, JJ., dissenting), that it has applied settled law.

2. The majority states that the consideration offered to the appellees was not only a $100 cash payment, two weeks severance pay and continued employment, but a guarantee of certain job benefits, including a favorable change in the employer's automobile reimbursement policy. However, the issue was framed by the parties before the lower court as follows:

 THE COURT: The issue as framed by the Defendants is whether payment of one hundred dollars is adequate consideration to support the employment restrictive covenant.

 Do you agree that is the issue in front of us?

 [APPELLANT'S COUNSEL]: I do not.

 The issue is the payment of one hundred dollars, promise of continued employment, and the placement of a provision in the employment contract for severance pay, constitute sufficient consideration.

 As the parties themselves did not consider the "guarantee of certain job benefits" significant enough to mention in framing the issue before the lower court, I would hold that this nebulous formulation is extraneous to our consideration on appeal. The lower court based its ruling on whether $100, two weeks severance pay and continued employment constituted adequate consideration for a restrictive covenant.

 Even if the appellant's "guarantee of certain job benefits" was appropriate for our consideration on appeal, I would nevertheless find that the benefits were of such slight worth that the basic question before us is still whether $100, 2 weeks severance pay, and continued employment constitutes adequate consideration for a restrictive covenant.

"corresponding benefit" or a "beneficial change in employment status" as the majority holds. The majority's ruling that it amounts to such largely emasculates the requirement of adequate consideration for a covenant not to compete entered into subsequent to employment. Accordingly, I would affirm the lower court's ruling on this issue. I would also hold that the two procedural issues raised by the appellant are meritless. I address each issue raised by the appellant in a separate section.

Preliminarily, I note that this appeal is from an order denying the appellant's Motion for a Preliminary Injunction. A preliminary injunction is rarely granted, as "a preliminary injunction is somewhat like a judgment and execution before trial...." *Herman v. Dixon*, 393 Pa. 33, 36, 141 A.2d 576, 577 (1958); *accord Hospital Ass'n v. Com., Dept. of Public Welfare*, 495 Pa. 225, 233, 433 A.2d 450, 454 (1981). Relief of this nature should only be granted where:

> there is an urgent necessity to avoid injury which cannot be compensated for by damages and [relief] should never be awarded when the rights of the plaintiff are clear. Also, it should in no event be issued unless the greater injury will be done by refusing it.

*Hospital Ass'n, supra* at 233, 433 A.2d at 454, *quoting Dixon, supra*, 393 Pa. at 36–37, 141 A.2d at 577.

Appellate relief from a decree granting (or refusing) a preliminary injunction is even more stringent, and incurs what has been termed an "additional burden." *Id.*, 495 Pa. at 233, 433 A.2d at 454; *Parker v. Philadelphia*, 391 Pa. 242, 247, 137 A.2d 343, 346 (1958). Appellate review is limited in such cases to whether the action of the lower court had "any apparent reasonable ground." *Hospital Ass'n, supra*, 495 Pa. at 234, 433 A.2d at 454, *quoting Bell v. Thornburgh*, 491 Pa. 263, 267, 420 A.2d 443, 445 (1980)). We have interpreted this standard to mean that "[a]n appellate court will interfere with the decision of the chancellor only if it is clear that no grounds exist to support the decree or that the rule was palpably erroneous or misapplied ..." *Bell, supra* at 267, 420 A.2d at 445; *Willman v. Children's Hosp. of Pittsburgh*, 505 Pa. 263,

269, 479 A.2d 452, 455 (1984); *quoting Intraworld, Inc. v. Girard Trust Bank,* 461 Pa. 343, 354, 336 A.2d 316, 332 (1975).

## I.

The law of Pennsylvania has repeatedly emphasized that in order to enforce a restrictive covenant it must (1) relate to (be ancillary to) a contract for the sale of the good will of a business or to a contract of employment; (2) the covenant must be supported by adequate consideration; and (3) the covenant must be limited in time and territory. *George W. Kistler v. O'Brien,* 464 Pa. 475, 480, 347 A.2d 311, 314 (1975); *Modern Laundry & Dry Clean. v. Farrer,* 370 Pa.Super. 288, 291–2, 536 A.2d 409, 411 (1988). Even if an employee enters into an employment contract containing a covenant not to compete subsequent to employment, "it must be supported by new consideration which could be in the form of a corresponding benefit to the employee or a beneficial change in his employment status." *Modern Laundry, supra* at 293, 536 A.2d at 411; *accord Kistler, supra,* 464 Pa. at 484–5, 347 A.2d at 316; *Maintenance Specialties, supra,* 455 Pa. at 331, 314 A.2d 279, 281; *Ruffing v. 84 Lumber Co.,* 410 Pa.Super. 459, 600 A.2d 545, 548 (1991). Post-employment restrictive covenants are subject to a more stringent test of reasonableness than covenants which are ancillary to a sale of a business. *Thermo–Guard, Inc. v. Cochran,* 408 Pa.Super. 54, 596 A.2d 188, 194 (1991).

Admittedly, case law in our jurisdiction regarding what constitutes "a corresponding benefit or beneficial change in employment status" has been limited at the present time to extremes. Where the consideration was either slight or non-existent, the covenant not to compete was found to be invalid. It is clear that the mere continuation of the employment relationship is not sufficient consideration for a restrictive covenant despite the fact that the employment relationship was terminable at-will by either party. *Maintenance Specialties, supra,* 455 Pa. at 331, 314 A.2d at 281 (Jones, C.J., Concurring). Similarly, our courts have found consideration lacking where the monetary benefit of the consideration was

slight or non-existent. For instance, it has been held that $1.00 is not adequate consideration to support a restrictive covenant. *Kistler, supra,* 464 Pa. at 485 n. 5, 347 A.2d at 316 n. 5. A provision which required the employer to give the employee notice before termination has not been considered sufficient consideration to support a covenant not to compete. *Maintenance Specialties, supra,* 455 Pa. at 330 n. 1, 314 A.2d at 281 n. 1 (fifteen days); *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 191, 231 A.2d 292, 294 (1967) (thirty days). A provision which changed an employee's relationship from at-will to week-to-week was also not sufficient consideration. *Markson Bros. v. Redick,* 164 Pa.Super. 499, 505, 66 A.2d 218, 220 (1949).

Restrictive covenants, however, have been found valid where it was absolutely clear that an employee received a change in status that either enabled him to increase his earnings substantially or provided him with the potential to increase his earnings substantially. For instance, sufficient consideration for a restrictive covenant was found when an employee became a commission-earning salesman and received travel expenses when formerly the employee had been a salaried employee servicing the complaints of the salesmen's customers. *M.S. Jacobs & Associates, Inc. v. Duffley,* 452 Pa. 143, 146–7, 303 A.2d 921, 923 (1973). Similarly, the change of an employee to a salesman supervising a specific route and receiving a commission of 17% of all the cash collected from the status of a provisional, salaried employee constituted sufficient consideration for a restrictive covenant. *Modern Laundry, supra,* 370 Pa.Super. at 293, 536 A.2d at 412. Where an independent contractor for a company became an employee of the company, receiving a written employment contract and the employer's assumption of unemployment and social security taxes and contributions to the company pension plan, valid consideration was found. *Pennsylvania Funds Corporation v. Vogel,* 399 Pa. 1, 5–6, 159 A.2d 472, 475 (1960). Finally, when an employee received an ownership interest in the firm, such that there existed the potential the employee could realize a significant gain in total compensation, we held

that adequate consideration existed. *Wainwright's Travel Service, Inc. v. Schmolk,* 347 Pa.Super. 199, 204, 500 A.2d 476, 478 (1985).

The case before us admittedly falls on the continuum between these two extremes. Notwithstanding, I agree with the lower court that the consideration offered in this case bears much greater resemblance to cases where we found that the consideration was not sufficient. The appellant claims that $100, two weeks severance pay, and continued employment is a "corresponding benefit" or a "beneficial change in employment status." This is plainly not so, as analyzing each so-called benefit more closely shows.

Continued employment has been specifically rejected as adequate consideration for a post-employment covenant not to compete. *See Maintenance Specialties, supra.* Thus, it is hard to discern why it should be considered as a factor in determining whether a "corresponding benefit to the employee or beneficial change in employment status" exists. Moreover, the $100 payment alone, without more, is surely not akin to the significant rights the employee would give up through a one year restrictive covenant. Finally, a promise of two weeks of severance pay, although a more significant economic benefit, is (1) a deferred benefit that (2) might never be received by the employee. Severance pay is a deferred benefit because the appellant is not obligated to pay the appellees the benefit until they leave the company or are terminated. Severance pay might not be received by the employee because it is only payable if an employee leaves the company before retirement, and if his company remains solvent. Although severance pay is not a trivial benefit, I cannot say, even with the "added benefit" of continued employment and a $100 payment, that there was sufficient consideration to establish the restrictive covenant was ancillary to a principal transaction. I note that the appellees received no promotion, change of title, raise, or other sign of a change in employment status. *See Modern Laundry, supra,* 370 Pa.Super. at 293, 536 A.2d at 412 ("After signing the employment contract, [the employee] received a significant change in employment status.");

*Wainwright's Travel Service, supra,* 347 Pa.Super. at 203, 500 A.2d at 478 (ownership interest given to employee in corporation).

The majority opinion suggests, but does not hold, that the better reasoned position is that no consideration should be required to execute a covenant not to compete entered into subsequent to employment aside from continued employment.[3] See Majority Opinion at 456 n. 3. It finds convincing the argument that since at will employees like the appellees can be terminated at any time for any reason, an offer of continued employment should constitute adequate consideration for the execution of a covenant not to compete. *See Id.; see also Maintenance Specialties, Inc., supra,* 455 Pa. at 337, 314 A.2d at 284–5 (Manderino and Roberts, JJ., dissenting). The tenor of this argument is that there exists no significant difference between requesting an employee to execute such a covenant as a condition of employment, and requesting the employee to execute one subsequent to employment. *Id.* Advocates of this position feel it is logically inconsistent to require consideration for the execution of such a covenant, as an employer could have hired new employees, and fired his present ones, if his present employees failed to execute the covenants. *Id.* As perhaps their view informs whether the consideration in this case is adequate, Justice Manderino's minority view must once again be revisited.

Justice Manderino's position appears analytically sound at first glance, but given a closer look seems divorced from the realities of life. It fails to recognize that subsequent to employment the position of the employer to exact a covenant not to compete is greater, and the employee's ability to resist one is weaker. When initially searching for employment, all things being equal, a person will prefer to chose a position which is the most attractive. Surely, a covenant not to compete is a significant disincentive to pick a particular employer, as it prevents a person from finding employment in his

3. This is, of course, the same thing as saying that no consideration should be required at all, since from the employee's point of view the *status quo* will not change except that he will be required to give up a significant freedom.

given profession in a certain specified geographical area. Given a free market, employment seekers will chose to work for employers who do not require this restraint on their freedom. However, once a person invests the often significant time and effort in finding a new job, it is difficult both economically and emotionally for the employee to walk away when the employer makes an unattractive employment condition. The employer, the entity on whose livelihood the employee (and his family) depends, accordingly is in a much better position to extract from his employee a covenant not to compete subsequent to employment.

As the majority recognizes, the appellant has not attempted to argue to the lower court or to this court that it was entitled under Pennsylvania law, independent of any contractual arrangement, to have its trade secrets and confidential customer lists protected.[4] Majority Opinion at 453 n. 2. Instead, the

4. An employer is entitled to the protection of confidential customer information even apart from any employer-employee agreement containing a restrictive covenant, as articulated in the seminal case *MacBeth–Evans Glass Co. v. Schnelbach*, 239 Pa. 76, 86 A. 688 (1913). *See also Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 623–6, 136 A.2d 838, 842–43 (1957); *Bell Fuel Corp. v. Cattolico*, 375 Pa.Super. 238, 257–260, 544 A.2d 450, 460 (1988), *alloc. denied*, 520 Pa. 612, 554 A.2d 505 (1989); *Agra Enterprises, Inc. v. Brunozzi*, 302 Pa.Super. 166, 448 A.2d 579 (1982); Comment, *Enforcement of Restrictive Covenants in Pennsylvania Employment Contracts*, 80 Dickinson Law R. 693, 693 n. 3 (1976). The information protected, generally speaking, must be a particular secret of the employer and of particular importance to his business, not a general secret of the trade. *Bell Fuel Corp., supra*, 375 Pa.Super. at 258, 544 A.2d at 460. Moreover, given the existence of a confidential relationship, "the legal right to protection may arise either from an express covenant protecting the secret or may be implied from the confidential relationship between the employer and employee in which the information was conveyed." *Id.*, citing *MacBeth–Evans Glass Co., supra*. Information dealing with an employer's customers, including customer lists, may in particular be subject to protection. *Morgan's Home Equipment, supra*, 390 Pa. at 623, 136 A.2d at 842. The inquiry in determining whether the customer information is protected revolves around whether the information is a particular secret belonging to the employer, developed through its efforts or investment, and of value to the continuation of the employer's business. *Bell Fuel Corp., supra*, 375 Pa.Super. at 259, 544 A.2d at 461. *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 415 Pa. 276, 280, 203 A.2d 469, 471 (1964); *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 358–9, 162 A.2d 370, 372–3, 471 (1960).

appellant has raised only the issue of adequate consideration in the context of a restrictive covenant not to compete. *Id.* While I find that certainly an employer has a strong interest in protecting confidential information produced through its business activities, the interest it has in restraining a former employee from honestly competing against him is significantly less. The majority asserts that that somehow a covenant not to compete prevents unfair competition by former employees. *Id.* at 456. This supposition is more false than true. The employer is already significantly protected from unfair competition apart from any contract under Pennsylvania law, which protects the most valuable asset of the employer: his confidential information and customer lists. A covenant not to compete, however, does not protect confidential information, but restricts potential future competition by a former employee, *even with companies the employer currently does not do business.*

I find that the common law rightly held such agreements, especially subsequent to employment, with disfavor. These agreements screen out all competition, whether fair or unfair. As was recognized in *Morgan,* the balance of the equities favors the employee:

A general covenant not to compete, however, imposes a greater hardship upon an employee than upon [an employer]. An employee is prevented from practicing his trade or skill, or from utilizing his experience in the particular type of work with which he is familiar. He may encounter difficulty in transferring his particular experience and training to another line of work, and hence his ability to earn a livelihood is seriously impaired. Further, the employee will usually have few resources in reserve to fall back upon, and he may find it difficult to uproot himself and his family in order to move to a location beyond the area of potential competition with his former employer. Contrawise, the mobility of capitol permits the businessman to utilize his funds in other localities and in other industries.

*Morgan's Home Equipment, supra,* 390 Pa. at 631-2, 136 A.2d at 846; *see also Maintenance Specialties, supra,* 455 Pa. at

336, 314 A.2d at 284 (Pomeroy, J., Concurring) ("An employee who has an economic stake, or even an emotional stake, in the continuation of an existing at-will employment arrangement may find it difficult indeed not to accept a covenant not to compete when his employer demands it.").[5]

Therefore, I respectfully dissent. For the first time, the majority holds that limited, indeed partly speculative,[6] economic perks constitute adequate consideration. The majority decision effectively eviscerates the efficacy of the requirement of a "corresponding benefit" or a "beneficial change in employment status" to support a covenant not to compete subsequent to employment. This ancient common law requirement continues to be just as sound today as it was in years past, as it goes beyond over-intellectualized economic theory and takes into the account the realities of the workplace. It recognizes that a covenant not to compete, as opposed to the protection of confidential employer information, imposes a much greater hardship on the employee, as it prevents him from competing fairly in his profession with a former employer within a geographical area.

## II.

Appellant asserts also that the lower court erred in requiring the appellant to proceed first at the Preliminary Injunction Hearing. Appellant argues that the tenor of the law is that appellees had the burden of proving that these agreements were invalid. *See, e.g., Seligman & Latz of Pittsburgh, Inc. v. Vernillo,* 382 Pa. 161, 164, 114 A.2d 672, 673 (1955) (employee has the burden of proving a restrictive covenant constitutes an unreasonable or illegal restraint on trade); *see also, John G.*

5. A covenant not to compete can be viewed as antithetical to the employment at will principle, in the respect that it impinges on the ability of one party, the employee, from terminating an employment relationship. Although the legal ability to terminate the relationship remains, in real terms such a covenant can place such an extreme hardship on the employee that terminating the relationship would be imprudent.

6. As noted above, severance pay is at best a deferred benefit and at worst one that will not materialize.

*Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 12–13, 369 A.2d 1164, 1169–1170 (1977). Accordingly, appellant asserts that it was incumbent for the lower court to instruct the appellees to proceed first.

I would find this argument to be without merit, assuming the argument is not waived.[7] Implicit to appellant's argument is that the party which has the burden of proof *necessarily* must proceed first. Appellant, however, does not provide us with a legal citation standing for this proposition. In fact, there is no indication from the cases that appellant cites that the employee *must* proceed first.

I do not believe that the party with the burden of proof must proceed first necessarily or even as a general rule. There does not appear to be a procedural rule in our Commonwealth's Rules of Civil Procedure governing the circumstances under which a party is required to present its case-in-chief first. However, the absence of such a rule indicates that the order of proceeding is within the province of the trial court. "The conduct of a trial is within the discretion of the trial judge, and his exercise of discretion will not be reversed in the absence of an abuse thereof." *Kearns v. Clark,* 343 Pa.Super. 30, 40, 493 A.2d 1358, 1363 (1985); *accord Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 433, 442 A.2d 1114, 1129 (1982); *DeFulvio v. Holst,* 239 Pa.Super. 66, 68, 362 A.2d 1098, 1099 (1976). The question becomes whether the trial court abused its discretion.

The appellant claims, aside from the fact that the appellees had the burden of proving the invalidity of the agreement, that the procedural posture of the case made it particularly incumbent that the lower court instruct the appellees to proceed first. A preliminary injunction had already been granted in this case as to appellees Tripodi and Butler Technologies, which allegedly indicated that the appellant would be able to establish grounds for relief. The appellant notes that since the lower court granted appellees' motion to dismiss at the

7. It appears from the Record that the appellant did not provide the lower court with any indication that it was dissatisfied with the court's ruling that the appellant proceed first. See Pa. R.A.P. 227.1(b).

close of appellant's case-in-chief, appellees presented no evidence which could challenge the validity of the agreements.

The trial court did not abuse its discretion. Firstly, the appellant was the plaintiff in the action below seeking the injunction. Traditionally, the plaintiff or moving party proceeds first in a civil action. Second, the appellees that the consent order of April 10, 1991 implies by its allotment of time which party was to proceed first. The order indicates that plaintiff has 45 minutes for direct; then defendant has 15 minutes for cross-examination; then defendant has 45 minutes for direct; and then the plaintiff has 15 minutes for cross-examination. If appellant's attorney wished appellees to proceed first, he could have sought to structure the consent order to allow this to happen. Third, the substantive issue before the Court (and before us on appeal) was a discrete one: whether the payment of one hundred dollars, the promise of continued employment, and a promise of two weeks severance pay upon termination of employment constituted adequate consideration to support post employment covenants not to compete. Given the issue, the appellant would seem to be the party with the most knowledge as to what consideration was actually proffered. There exists a policy of interpreting our Commonwealth's procedural rules in favor of proceeding in a manner which would be most efficient to the resolution of the matter before the Court (as long as a party is not deprived of a just determination). It is manifestly apparent that no abuse of discretion occurred in the case *sub judice*.

### III.

Appellant's final claim of error is that the lower court erred in refusing to permit testimony regarding the breach of the employment agreements and by refusing to allow appellant to make reference to Judge Wekselman's January 22, 1991 order. I have reviewed the Record, and am convinced that this argument is utterly without merit. As the lower court noted in its Opinion, the consent decree agreed to by the parties limited the scope of the hearings to the validity of the employment agreements. Although the scope of the hearing could

have arguably encompassed other matters, the parties made clear in framing the issue before the court at the April 25, 1991, hearing that the issue to be determined was whether the employment restrictive covenants were valid in light of the consideration given to the appellees. Transcript at 3–4. Thus, the issue was an extremely narrow one in which the proposed testimony and Judge Wekselman's January 22, 1991 order was irrelevant.

For the foregoing reasons, I would affirm the order below.